15 MAG 3078

Approved: _____
DREW JOHNSON-SKINNER
Assistant United States Attorney

Before:   HONORABLE JAMES L. COTT
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :   COMPLAINT

        - v. -                    :   Violations of
                                      21 U.S.C. §§ 841(a)(1), 846
                                      and
MARTIN LEYVA SALGADO,             :   18 U.S.C. § 2
JUAN PERALTA, and
LUIS QUINONES,                    :   COUNTY OF OFFENSE:
                                      BRONX
                Defendants.       :

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

        Jarrod Halber, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

        1.    From at least in or about July 2015 up to and including on or about August 28, 2015, in the Southern District of New York and elsewhere, MARTIN LEYVA SALGADO, JUAN PERALTA, and LUIS QUINONES, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

        2.    It was a part and an object of the conspiracy that MARTIN LEYVA SALGADO, JUAN PERALTA, and LUIS QUINONES, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).

3. The controlled substance that MARTIN LEYVA SALGADO, JUAN PERALTA, and LUIS QUINONES, the defendants, conspired to distribute and possess with intent to distribute was one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

COUNT TWO
(Narcotics Possession with Intent to Distribute)

4. On or about August 28, 2015, in the Southern District of New York, MARTIN LEYVA SALGADO, JUAN PERALTA, and LUIS QUINONES, the defendants, intentionally and knowingly distributed and possessed with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

5. The controlled substance involved in the offense was one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code,
Sections 812, 841(a)(1), and 841(b)(1)(A);
and Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges, are, in part, as follows:

6. I am a Special Agent with the DEA. I have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with law enforcement agents and others, as well as my examination of documents, reports, and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

7.  Based on my personal involvement in this investigation, my conversations with other law enforcement officers, including a law enforcement officer acting in an undercover capacity ("UC-1"), and others, and my review of documents, and reports, I have learned, among other things, the following:

a. In or about July 2015, an individual ("CS-1")[1] advised law enforcement officers that CS-1 had met with MARTIN LEYVA SALGADO, the defendant, at a car dealership in the Bronx, New York. CS-1 stated, in sum and substance, that LEYVA SALGADO asked CS-1 if he had any customers available to purchase drugs, and CS-1 responded that he did. CS-1 stated, in sum and substance, that LEYVA SALGADO asked CS-1 to arrange a meeting.

b. On or about July 23, 2015, acting at the direction of law enforcement, CS-1 introduced UC-1 to LEYVA SALGADO in the vicinity of South Broadway and Fanshaw Avenue in Yonkers, New York. LEYVA SALGADO offered, in sum and substance, to sell heroin and cocaine to UC-1. UC-1 and LEYVA SALGADO discussed the price per kilogram of heroin and agreed that UC-1 would purchase five kilograms of heroin from LEYVA SALGADO at a price of $63,000 per kilogram.

c. On or about August 22, 2015, LEYVA SALGADO spoke with CS-1 and asked to meet with UC-1 again. After speaking with UC-1 and acting at the direction of law enforcement, CS-1 responded that UC-1 could meet with LEYVA SALGADO on or about August 24, 2015, in the vicinity of Southern Boulevard and Fordham Road in the Bronx, New York.

d. On or about August 24, 2015, UC-1, CS-1, and LEYVA SALGADO met in the vicinity of Southern Boulevard and Fordham Road in the Bronx, New York. LEYVA SALGADO stated, in sum and substance, that he could not provide five kilograms heroin, but he could provide 3.6 kilograms of heroin.

e. On or about August 28, 2015, LEYVA SALGADO and UC-1 spoke via telephone and, in sum and substance, LEYVA SALGADO agreed that he and CS-1 would meet with UC-1 in the vicinity of South Broadway and Fanshaw Avenue in Yonkers, New

---

[1] CS-1 has been charged with narcotics trafficking in the Southern District of New York. CS-1 has been assisting law enforcement in the hopes of receiving a sentencing reduction. Information provided by the CS-1 as part of this investigation and others has proven reliable and has been corroborated by independent evidence, including seizures of narcotics.

3

York, in order to conduct the heroin transaction.

f. On or about August 28, 2015, CS-1 spoke with UC-1, and acting at the direction of law enforcmeent, CS-1 met with LEYVA SALGADO in the Kingsbridge area of the Bronx, New York, and then drove with LEYVA SALGADO in CS-1's vehicle ("Vehicle-1") to the vicinity of South Broadway and Fanshaw Avenue in Yonkers, New York. CS-1 parked Vehicle-1 in that area. UC-1 approached and entered Vehicle-1 and saw CS-1 and LEYVA SALGADO inside. LEYVA SALGADO stated, in sum and substance, that he had to make a call in order for the heroin to be delivered and that the people who had the heroin were approximately 15 minutes away.

g. In sum and substance, LEYVA SALGADO asked UC-1 for an address where the heroin transaction would take place. UC-1 provided LEYVA SALGADO a certain address in the same area. UC-1 observed LEYVA SALGADO send a text message on his cellular telephone. LEYVA SALGADO stated to UC-1, in sum and substance, that the guys would come in a cab.

h. Several minutes later, UC-1 observed LEYVA SALGADO speak on the telephone and instruct the party on the other end of the call that they had gone too far and to turn around. LEYVA SALGADO then stated to UC-1, in sum and substance, that the individuals had arrived and they were parked at a certain gas station in the vicinity of South Broadway and Fanshaw Avenue in Yonkers, New York. UC-1 asked if the vehicle was a particular black vehicle and LEYVA SALGAGOD indicated that it was a different vehicle parked at a gas station. UC-1 asked it was the SUV and LEYVA SALGADO indicated that it was. UC-1 stated, in sum and substance, that he was going to look at it and that if it was good, UC-1 would count the money inside a nearby business.

i. UC-1 exited Vehicle-1 and walked to a black Honda Pilot parked at the gas station in the vicinity ("Vehicle-2"). UC-1 approached Vehicle-2 and observed an individual, later identified to be LUIS QUINONES, the defendant, sitting in the driver's seat and an individual, later identified to be JUAN PERALTA, the defendant, sitting in the rear passenger seat. PERALTA invited UC-1 to enter Vehicle-2. UC-1 entered Vehicle-2 and sat in the rear passenger seat with PERALTA. UC-1 observed a black and red shoulder bag sitting on the floor of Vehicle-2 next to PERALTA ("Bag-1"). UC-1 asked, in sum and substance, if it was here, and indicated towards Bag-1. PERALTA responded, in sum and substance, yes. UC-1 picked up Bag-1, which was partially open, and observed three rectangular, brick-like

4

objects wrapped in tape, one of which was broken. Based on UC-1's training and experience as a law enforcement officer, the objects appeared to contain at least three kilograms of a hard substance and were wrapped in a manner frequently used to package kilograms of narcotics.

   j. UC-1 partially removed some of the brick-like objects out of Bag-1 and asked, in sum and substance, if it was "good." QUINONES said, in sum and substance, of course, "one-hundred percent." PERALTA said, in sum and substance, yes, that it "comes from Mexico." PERALTA said further, in sum and substance, we brought that from Newark. UC-1 said, in sum and substance, the guy said he would have "3.6" here. PERALTA and QUINONES both responded, in sum and substance, yes, it should be there. UC-1 stated, in sum and substance, that he hoped it was good. PERALTA said, in sum and substance, yes, "number one." QUINONES said, in sum and substance, that it is better than the "Pope."[2]

   k. UC-1 stated, in sum and substance, that he would go count the money and that he would return to Vehicle-1. At that point, UC-1 exited Vechile-2 and gave a pre-arranged arrest signal to other law enforcement officers who were present nearby. Law enforcement officers arrested PERALTA and QUINONES in Vehicle-2 and LEYVA SALGADO in Vehicle-1.

   l. The substance contained in one of the brick-shaped packages found in Bag-1 was subsequently field tested, and it tested positive for heroin. The packages were weighed and weighed approximately 3.9 kilograms.

   m. After his arrest, LEYVA SALGADO was read his Miranda rights and indicated that he wanted to speak to law enforcement officers. Among other things, LEYVA SALGADO stated, in sum and substance, that he had received the heroin from an individual in Newark, New Jersey, and that PERALTA and QUINONES acted as his drivers on the day of the arrest.

   n. After his arrest, QUINONES was read his Miranda rights and indicated that he wanted to speak to law enforcement officers. Among other things, QUINONES said, in sum and substance, that he and PERALTA picked LEYVA SALGADO up in the morning of August 28, 2015 in the Bronx, New York, at LEYVA

---

[2] The conversations described in this paragraph and elsewhere in this Complaint were primarily in Spanish, and were translated by a law enforcement officer. The translations are preliminary and subject to revision.

SALGADO's request. QUINONES stated further that LEYVA SALGODA told QUINONES and PERALTA that LEYVA SALGADO was going to be selling 3.6 kilograms of heroin that day.

WHEREFORE, deponent prays that MARTIN LEYVA SALGADO, JUAN PERALTA, and LUIS QUINONES, the defendants, be imprisoned or bailed, as the case may be.

_____
Jarrod Halber
Special Agent
Drug Enforcement Administration

Sworn to before me this
29th day of August, 2015

_____
HONORABLE JAMES L. COTT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK